OPINION *Page 2 
{¶ 1} Defendant/appellant/lessee, Counsel Appraisals Inc. (hereinafter "Counsel Appraisals") appeals the judgment of the Auglaize County Municipal Court finding that the plaintiff/appellee/lessor, Ft. Barbee Riverview Limited Partnership (hereinafter "Ft. Barbee") was entitled to possession of the premises described as 100-108 West Spring Street in St. Mary's, Ohio. For the reasons that follow, we affirm the trial court.
 {¶ 2} On September 1, 2005, Counsel Appraisals and Ft. Barbee entered into a lease agreement. On August 30, 2006, Ft. Barbee filed a "complaint for restitution of premises" alleging Counsel Appraisals breached the lease by failing to pay rent and utilities. The trial court held a hearing on October 20, 2006.
 {¶ 3} In its judgment entry, the trial court found: "in lieu of proof of the improvements to the value of the rent due and in lieu of payment of the rent that the plaintiff is entitled to judgment for possession of said premises. The defendant is ordered to immediately surrender possession of the premises described as 100-108 West Spring Street, St. Marys, Ohio to the plaintiff."
 {¶ 4} It is from this judgment that Counsel Appraisals appeals and asserts one assignment of error for our review. *Page 3 
 ASSIGNMENT OF ERROR NO. I The Trial Court's Decision granting forcible entry and detainer in favor of Plaintiff-Appellee is against the manifest weight of the evidence.
 {¶ 5} Counsel Appraisals argues the language in the agreement provides that rent will be forgiven dollar for dollar for improvements made to the property. Counsel Appraisals argues: it made or caused to be made improvements to the premises in excess of $9,000; Ft. Barbee admitted improvements were made but made no effort to determine the value of the improvements, other than to ask Counsel Appraisals; and Counsel Appraisals provided Ft. Barbee with statements which indicated improvements in excess of $9,000 were made. Counsel Appraisals argues that if Ft. Barbee disagreed with the evidence Counsel Appraisals presented, then Ft. Barbee had the duty and burden to present evidence as to the value or lack of value of the improvements.
 {¶ 6} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."C.E. Morris Company v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280,376 N.E.2d 578, citations omitted. The trial court is in the best position to observe the witnesses and weigh the credibility of the testimony. Seasons Coal Co., Inc. v. City of Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273. *Page 4 
 {¶ 7} The lease agreement signed by Ft. Barbee and Counsel Appraisers provided in pertinent part:
3. Rent.
 (a) Base Rent-Lessee agrees to pay to Lessor as "Base Rent" the following sums by the date set forth below:
 (1) An initial rent of Two Thousand Dollars ($2,000) due 08/07/2005.
 (2) Nine Thousand Dollars ($9,000.00) annually which shall be due and payable with a one-twelfth (1/12th) installment payment on the first day of each month consecutively beginning 08/01/2005, and continuing each month thereafter until this Lease is terminated. Base Rent shall increase automatically by two percent (2%) on the anniversary date for each year the Lease is in effect. Lessee agrees to immediately proceed to make $20,000.00 in improvements to the Leased Premises.
 (3) Lessor shall forgive rent each month in exchange for all improvements dollar for dollar for the first two years of the Lease to a maximum of $9,000.00 per year.
 (b) Additional Rent-Lessee agrees to pay or cause to be paid as "Additional Rent" throughout the term of this Lease all assessments, electric, gas, water, and sewer rent, which at any time during the term of this Lease may be assessed, levied, or imposed upon or become due and payable for the Leased Premises. Lessee shall pay same directly to the appropriate governmental authority or utility company prior to delinquency.
 Lessee also agrees to pay its pro rata share of thirty-seven percent (37%) to Lessor for all increases in real estate taxes made after the effective date of this Lease. *Page 5 
 (c) Rent-Base Rent and Additional Rent are sometimes collectively referred to as "rent."
 4. UTILITIES.
 Lessee shall promptly pay or cause to be paid all charges for gas, heat, light, power, or other utilities consumed or used by lessee or any subtenant of Lessee on the Leased Premises.
 5. NET LEASE.
 This Lease shall be deemed and construed to be a "Net Lease" and, except as otherwise expressly provided, the Lessor shall receive the Base Rent, Additional Rent, and all other payments hereunder to be made by Lessee free from any charges, assessments, impositions, expenses, or deductions of any and every kind or nature whatsoever except as otherwise expressly provided in this lease.
 The Lessee agrees to use its best efforts in cooperating in the pending agreement ith [sic] the City of St. Marys, Revolving Loan Committee that has offered to accept equivalent value of capital improvements to the commercial spaces in exchange for waiving the monthly payments on the CDBG loan for up to two years.
 * * *
Emphasis added.
 {¶ 8} The parties do not dispute that the commercial lease agreement signed by the parties provided for improvements in lieu of rent on a dollar for dollar basis up to $9,000. The parties also do not dispute that some improvements had been made to the property. Rather, the issues in this case center on the value *Page 6 
of the improvements, the proof required to demonstrate the value of the improvements, and which party had the burden of proof.
 {¶ 9} At the hearing, George Fred Schwab testified on behalf of Ft. Barbee that the initial $2,000 payment for rent had been made. (T. 10/20/06 at 3). According to Schwab, after the initial payment, Ft. Barbee had not been paid any additional rent. (Id. at 9). Schwab testified that he observed improvements to the property including painted interior walls and carpeting on the floor; however, Schwab argues that he had been provided no receipts, invoices, or proof of the improvements. (Id. at 6-7, 9, 20). On cross-examination, Schwab testified that he had been presented with a pile of bills just prior to the trial court going into session. (Id. at 10).
 {¶ 10} Tim Townsend, an officer of Counsel Appraisals, testified that the condition of the premises when Counsel Appraisals took over consisted of "[t]he storefronts were empty, unheated, a, there was water running in a sink, um cold; some of the windows down in the basement were not sealed; cracked; rough condition." (Id. at 22). Townsend testified that he had shut off the water line. (Id.). Townsend testified that he and Calvin Schanz[1] "cleaned up in the basement; sealed windows, tried to seal the gaps or winterized. A, haven't done a lot of *Page 7 
major renovations but we've certainly done a lot of cleaning and winterization and things like that." (Id. at 24).
 {¶ 11} In addition, Townsend testified that he sought out tenants and told them their improvements would apply against the rent. (Id. at 24). Townsend testified that Thin and Healthy had given him a sheet that showed that they had done $8,000.00 worth of improvements, and he faxed the sheet to Mr. Schwab. (Id. at 25). Townsend testified that the lady who runs Thin and Healthy has a husband who is a contractor and that Townsend "saw him going in and out and working daily for several weeks." (Id. at 25). In reference to the improvements made to the premises where Thin and Healthy is located, Townsend testified,
 A: Well Thin and Healthy, when we went in there there were bare studs that were built out from the wall. Just, bare studs a, no particular paint or a, or decoration on any of the walls. A, there were no partitions a, I think the bath room was in rough shape. A, when they moved in they put walls up. They patched the ceiling. They put partitions that made it more like a modern office. A, —
 Q: Did they put in carpet?
 A: They put in carpet and they fixed the bathroom.
 Q: When they put up the walls did they also run electrical?
 A: I believe that they a, he rewired everything and made sure it was to code.
 Q: Okay and as Mr. Schwab said, they also painted the interior you saw?
 A: Yes.
(Id. at 26-27). *Page 8 
 {¶ 12} Townsend testified that the tenant in the restaurant part is Bill Jaqua and the restaurant is called the Gourmet Bistro (hereinafter "Bistro"). (Id. at 27-28). According to Townsend, Exhibit 1 consisted of "receipts that were done at the Bistro," which Jaqua gave to him. (Id. at 30). Townsend further testified that he believed the receipts totaled $16,128.00 plus a $1,000.00 awning. (Id at 30). At the hearing, Townsend testified:
 Q: Okay, Tim from observing the premises, a, I'm assuming you're there almost everyday correct?
 A: Well I work across the street and so I kind of see what's going on, yes.
 Q: All right, a, do you have any cause at all to believe that those improvements were not made and that those are not the receipts for those improvements?
 A: I have no reason to believe that at all.
 Q: Have you seen those different companies like Kogge? And a, a, this Mr. Foor and those people in there working?
 A: Yes.
(Id. at 31).
 {¶ 13} On cross-examination, Townsend testified:
 Q: So you have no personal or direct knowledge that these bills were for work actually performed?
 A: Only from the standpoint that I saw people working and it looked like they were performing things that would require receipts like that.
 Q: That would require receipts? But, not necessarily these receipts, right?
 A: I don't know.
(Id. at 45).
 {¶ 14} In its judgment entry, the trial court stated, *Page 9 
 The lessee entered into agreements with its commercial tenants that they would be forgiven rent for improvements that they made to the premises.
 First the agreement is rather loose as to what improvements would qualify for the rent credit-while the agreement with the City was clear when it specified capital improvements.
 Second, no approval as to any improvements was ever sought or obtained from the Lessor or the National Park Service.[2]
 No prior approval of the subletting of the 1st floor commercial space was sought but the Lessor was aware of and had no objections to the tenants occupying that space.
 The plaintiff was unable to secure a waiver on the CDGB loan since plaintiff was unable to obtain proof satisfactory to the City as to the improvements to the premises.
 The defendant failed to provide the plaintiff with any proof as to the value of improvements until the day of hearing on the complaint for possession of the premises even though several demands were made for such proof or payment of rent. The evidence as to improvements is not competent evidence before this court. The documentation is hearsay. The defendant can only testify that he is aware improvements were made by his tenants. He cannot prove that the documentation is of actual expenditures on the lease premises.
 The Court finds that in lieu of proof of the improvements to the value of the rent due and in lieu of payment of the rent that the plaintiff is entitled to judgment for possession of said premises. The defendant is ordered to immediately surrender possession of the premises described as 100-108 West Spring Street, St. Marys, Ohio to the plaintiff. *Page 10 
 {¶ 15} Townsend could only testify that he saw people working at the premises, that there were improvements made to the premises, and that the receipts in Exhibit 1 are the receipts that Jaqua gave to him. (Id. at 30).
 {¶ 16} Schwab testified that the initial rent payment of $2,000 had been made but Ft. Barbee has not been paid any additional rent. (Id. at 3, 9). Although the record clearly indicates that improvements were made to the premises, there is no evidence that the submitted bills represent work done to, or supplies for, the premises in question. In addition, there was no testimony to specifically link the submitted bills with the specific improvements to the premises. The evidence in the record does not establish the value of the improvements to the property.
 {¶ 17} After reviewing the record, we find that there is competent credible evidence to support the trial court's judgment. Counsel Appraisals sole assignment of error is, therefore, overruled.
 {¶ 18} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 ROGERS, P.J., and WILLAMOWSKI, J., concur. r
[1] Schanz's first name has been spelled both Calvin and Kalvin in the transcript, and thus, we will spell his first name Calvin.
[2] Paragraph 11 of the lease provides in pertinent part: "Lessee shall not make any alterations or repairs or undertake any work of any kind without the prior written approval of the Lessor and the National Park Service as submitted through the Ohio Historic Preservation Office." *Page 1